IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEVEN H. WHITE,

        Plaintiff,

v.                                CIVIL ACTION NO.   2:20-cv-00539

THE HUNTINGTON NATIONAL BANK, N.A.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant The Huntington National Bank's Motion to Dismiss* (Document 6), the *Memorandum of Law in Support of Defendant The Huntington National Bank's Motion to Dismiss* (Document 7), the *Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss* (Document 11), and *The Huntington National Bank's Reply in Support of Its Motion to Dismiss* (Document 12), as well as all attached exhibits and the Plaintiff's *Complaint* (Document 1-1).   For the reasons stated herein, the Court finds that the motion to dismiss must be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Steven H. White, began taking loans from the Defendant, The Huntington National Bank (the Bank), in 1998.   In February 2009, he had a $900,000 revolving line of credit secured by fitness equipment and a $12 million revolving line of credit secured by a margin account containing publicly-traded stocks maintained in Huntington Investment Company, an affiliate of the Bank.   The $900,000 loan was memorialized with a Promissory Note signed June 19, 1998.   The $12 million loan was memorialized with a Promissory Note dated November 5, 2007.   The terms of the loans initially permitted the bank to call them at any time, even if Mr.

White was not in default.  In addition, Mr. White was required to maintain a 75% loan-to-value (LTV) ratio by either paying down the principle balance or providing additional collateral if the outstanding balance exceeded 75% of the collateral value.

In fall 2008, the Bank notified Mr. White that he was out of compliance with the LTV requirement as to the larger loan.  In addition, as a result of the economic downturn beginning in 2008, the Bank needed to increase its liquidity.  A Senior Vice President, Michael Morris, and Mr. White began discussing modification of his loan terms.  In a February 13, 2009 Term Sheet, the Bank proposed a $2 million loan to reduce Mr. White's indebtedness on the $12 million revolving line of credit with certain real estate as collateral, and further proposed additional collateral to support the $12 million revolving line of credit.  (Def.'s Ex. C) (Document 6-3.)  The Term Sheet also contains the following disclaimer: "The subject terms and conditions do not constitute a commitment by HNB.  The obligation of HNB to make available this proposal shall be subject to (1) the negotiation and execution of a formal agreement, in form and substance satisfactory to HNB, and (2) HNB satisfactorily completing its due diligence review and formal credit approval."  (*Id.* at 3.)

Mr. White and Mr. Morris continued discussing modified loan terms in letters dated February 17, 2009 and February 19, 2009.  Mr. White's proposed terms included not permitting the Bank to consider him in default unless a payment is not made within fifteen days of its due date, and only with thirty-day written notice, additional collateral to support the $12 million loan, the right to substitute real estate collateral, agreements with respect to interest rates, fees, and insurance, the right to refinance property with other lenders, and the right to use dividends and earnings from selling calls to cover payments.  The Bank responded with a letter explaining why

some of the proposed terms would not work and agreeing to others, closing with "I believe this covers everything. We look forward to talking with you to confirm so that we may begin to move forward."  (Comp. at ¶ 22) (Document 1-1.)  Mr. White contends that the parties performed under the terms outlined in the communications.

The parties were performing under the new agreement when another vice president, Brian Krause, informed Mr. White that "the Bank had decided that Mr. Morris should not have entered into the new agreement with Mr. White" and called the loans, causing Mr. White's margin account to be liquidated in April 2010.  (*Id.* at ¶ 8.)  The account was worth just under $8 million at the time.  Today, it would be worth more than $19 million.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid

3

of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

The Defendant urges the Court to dismiss the complaint.  It argues that the Plaintiff is alleging it breached a contract that did not exist.   It contends that the communications of February 17 and February 19, 2009, were merely a negotiation related to the February 13 Term Sheet, which specified that any agreement would be formalized through execution of a formal agreement following due diligence and credit approval.   The Defendant argues that the original Notes related to the loans remained in effect because the parties did not reach an agreement regarding any changes to the terms, and its actions were permissible under the terms of those Notes.   In addition, the Defendant contends that the Plaintiff's claim is barred by the statute of limitations.   It relies on a letter to the Bank from an attorney representing the Plaintiff, dated October 30, 2009, threatening litigation should the Bank continue to attempt to renege on the alleged agreement.

The Plaintiff argues that he has adequately alleged that a contract was formed, evidenced by both the letters discussing terms and the subsequent performance of the parties.   He contends that the Bank breached the modified terms of the loan agreement when it called the loans in April 2010.   He argues that his complaint, filed on March 20, 2020, is within the ten-year statute of limitations, measured from the date of the breach on March 29, 2010.   The Plaintiff asserts that the earlier threat of litigation is irrelevant because the breach, and his resulting injury, had not yet occurred.

As an initial matter, the Defendant attached a number of exhibits to its motion to dismiss. "A document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'"  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting from *Sec'y of State For Defense v. Trimble*

5

*Nav. Ltd.,* 484 F.3d 700, 705 (4th Cir.2007)). The documents include the original promissory notes (Exhibits A and B, at Document 6-1 and 6-2), a Term Sheet drafted by the Bank and dated February 13, 2009 (Exhibit C, at Document 6-3), the letters exchanged on February 17 and February 19, 2009, which were also attached to the complaint (Exhibits D and E, at Document 6-4 and 6-5), and a letter from Mr. White's then-attorney, dated October 30, 2009, expressing Mr. White's position that an agreement had been reached and threatening litigation should the Bank renege (Exhibit F, at Document 6-6).

The Court finds that the original Promissory Notes are integral to the complaint. Although the Plaintiff alleges that the terms were subsequently modified, the original contracts remain central to a breach of contract suit. The Court further finds that the letters of February 17 and February 19, 2009, which were quoted in the complaint and attached to the complaint, may be considered. Given the Plaintiff's allegation that the communications regarding amended terms for the loans formed a contract, the Court also finds the February 13, 2009 Term Sheet, which initiated the discussion of new proposed terms, to be integral to the complaint. However, the October 30, 2009 letter from an attorney is not central to the Plaintiff's allegations and does not form the basis of any cause of action, and the Court will not consider that document.

"To state a claim for breach of contract under Rule 12(b)(6), [the plaintiff] must allege facts sufficient to support the following elements: the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (Goodwin, J.). "A meeting of the minds of the parties is a *sine qua non* of all contracts." Syl.

Pt. 4, *Sprout v. Bd. of Educ. of Cty. of Harrison*, 599 S.E.2d 764, 765–66 (W. Va. 2004) (quoting *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 (1932)) (internal quotation marks omitted). "West Virginia contract law requires mutual assent to form a valid contract." *New v. GameStop, Inc.*, 753 S.E.2d 62, 70 (W. Va. 2013); *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450-51 (W. Va. 1993). Furthermore, "the party seeking to recover in an action for breach of contract has the burden of establishing the existence of a legally enforceable agreement." *Knox Energy, LLC v. Gasco Drilling, Inc.*, 738 F. App'x 122, 124 (4th Cir. 2018) (unpublished).

The Plaintiff alleges that he and a Senior Vice President with the Bank agreed to the terms recorded in the February 17 and February 19, 2009 letters, and that he and the Bank performed under those new amended terms. However, the February 13, 2009 Term Sheet that was related to those negotiations expressly states that the Bank will commit to new terms only after negotiating and executing a formal agreement, following due diligence and credit approval. The content of the February 17 and February 19 letters likewise reflect ongoing negotiations. The Plaintiff's February 17 letter leaves certain proposed terms vague, such as a "[f]orbearance agreement acceptable to my attorneys." (Def.'s Ex. D at 2) (Document 6-4.) The February 19 letter from the Bank closes with "We look forward to talking with you to confirm so that we may begin to move forward." (Def.'s Ex. E at 2) (Document 6-5.)

Under West Virginia law, "[w]here, from all the evidence and circumstances of the case, it appears that the parties to an agreement being negotiated between them intend that, as a condition precedent to its becoming binding upon them, it should be reduced to writing and signed by the parties, an oral agreement, though it covers all the terms of the proposed agreement, is not binding on the parties, until it is reduced to writing, and has been signed by all the parties thereto." Syl.

Pt. 5, *Sprout v. Bd. of Educ. of Cty. of Harrison*, 599 S.E.2d 764, 766 (W. Va. 2004) (quoting Syllabus Point 1, *Blair v. Dickinson,* 133 W.Va. 38, 54 S.E.2d 828 (1949)). The West Virginia Supreme Court has also cautioned that "care should be taken not to construe as an agreement that which the parties only intended to be a preliminary negotiation." *Id.* at 768 (quoting *Blair v. Dickinson,* 54 S.E.2d 828, 844 (1949)).

The letters in this case clearly reflect negotiations, rather than a mutual meeting of the minds on an agreement to which both parties intended to be bound. In general, whether surrounding circumstances and discussions resulted in an enforceable agreement will be fact dependent, to be resolved at summary judgment or trial. However, this case was filed on March 20, 2020, with an alleged breach of the contract on March 29, 2010. "West Virginia has a five-year statute of limitations for oral contracts and a ten-year statute of limitations for written contracts." *Mulvey Const., Inc. v. Bituminous Cas. Corp.*, 571 F. App'x 150, 161 (4th Cir. 2014) (unpublished) (citing W. Va. Code § 55–2–6). Thus, the Plaintiff must plausibly allege breach of a written, signed contract to apply the ten-year statute of limitations.[1] The content of the letters does not support the allegation that they are an enforceable agreement to which the parties intended to be bound, and any oral or implied agreement to be bound to the terms contained in the letters or any other modification of the original Promissory Notes would be barred by the statute of limitations.[2] Therefore, the Court finds that the Plaintiff has not alleged facts that, if proven, would establish that the Bank breached an enforceable written contract.

---

1 Because the Court has declined to consider the October 30, 2009 letter, and the Plaintiff alleged that the breach occurred on March 29, 2010, a motion to dismiss based on the ten-year statute of limitations would be denied pending discovery.
2 In addition, the original Promissory Note as to the $12 million revolving line of credit states that "Upon any change in terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note…shall be released from liability." (Promissory Note, Def.'s Ex. B at 3) (Document 6-2.) The terms of the original Promissory Note undisputedly permit the Bank to call the loan with or without default.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant The Huntington National Bank's Motion to Dismiss* (Document 6) be **GRANTED** and that this matter be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 16, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA